29
7|24|02
usm

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SYDNEY BRADSHAW,                    :
                                    :
        Plaintiff                   :
                                    :      CIVIL NO. 1:CV-01-0755
        vs.                         :
                                    :      (Judge Caldwell)
PATRICIA L. SAUERS, M.D.,           :
et al.,                             :
                                    :
        Defendants                  :

FILED
JUL 2 4 2002
ism
HARRISBURG, PA.        DEPUTY CLERK

M E M O R A N D U M

I.    Introduction.

        Sydney Bradshaw, an Immigration and Naturalization Service

("INS") detainee, currently housed at the Berks County Correctional

Facility, initiated this civil rights action pursuant to 42 U.S.C.

§ 1983 concerning medical treatment he received while housed at the

York County Prison.[1]  He proceeds in forma pauperis in this matter.

Named as defendant are: the York County Prison; Patricia L. Sauers,

M.D., the Medical Director and treating physician at the York

County Prison; and EMSA Correctional Care, Inc. ("EMSA"), the

contract health care provider responsible for providing medical

care to inmates at the York County Prison.

        Presently pending is defendants' motion for summary judgment.

For the reasons that follow, the motion will be granted.

_____

        [1]  Bradshaw was housed at the York County Prison from August
29, 2000 until June 27, 2001.

Certified from the record
Date 7|24|02

II.  <u>Background</u>.

Briefly stated, Bradshaw alleges he was not properly treated for back pain during his ten-month incarceration at the York County Prison.  He claims defendants were deliberately indifferent to his pain and suffering when they "failed to administer medication that was previously prescribed to plaintiff for a previously diagnosed back ailment."  (Doc. 1).

More specifically, Bradshaw avers that before his transfer to the York County Prison he was diagnosed with a back ailment requiring the use of narcotics and muscle relaxants consisting of Darvocet, Soma and Vicodin.  Bradshaw acknowledges that upon his arrival at the York County Prison a male physician prescribed Soma for him but only "for a short time."  (<u>Id</u>.)  Later, he saw Dr. Sauer who denied his request for SOMA, Darvocet and/or Vicodin, stating they were not available to him at that facility.  Bradshaw later learned that two other inmates at the prison regularly received Darvocet.  Because these two inmates are United States citizens, Bradshaw "concluded" he was denied Darvocet and received "substandard medical care" because of his alien status.  (<u>Id</u>.)

While at the prison Bradshaw admits his back was x-rayed, and that he received Naprosyn, a non-narcotic anti-inflamatory, twice a day.  He claims his treatment was not altered in spite of his many sick call slips related to his severe back pain.  He asserts the

-2-

treatment he received was inadequate to address his on-going back pain. (Doc. 1).

On October 29, 2001, the defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and/or Summary Judgment with a supporting brief and exhibits (Doc. 16).  In that motion the defendants argue, in part, that Bradshaw failed to exhaust available administrative remedies relating to claims raised in the complaint. Additionally, defendants address the merits of Bradshaw's Eighth Amendment medical claim, suggesting he does not have a serious injury, nor were they deliberately indifferent to his non-serious medical condition.

In connection with their motion, defendants supplied the affidavit of Deputy Warden Roger Thomas, the individual in charge of the prison's Complaint Review System which suggests Bradshaw did not exhaust his administrative remedies relating to his complaints of inadequate medical care for his back pain or the alleged denial of specific pain medications due to his alien status while housed at the prison. (Doc. 16, Exhibit D).

Defendants have also submitted the affidavit of defendant Sauers based upon her personal knowledge and treatment of Bradshaw as well as her review of his medical record.  In that affidavit, Dr. Sauers notes that Bradshaw arrived at the York County Prison with a medical history which included multiple psychiatric hospital

admissions, a suicide attempt involving an overdose, a past history of substance abuse including cocaine, marijuana, and alcohol which included 17 "rehab" admissions and 20 "detox" admissions. (Doc. 16, Exhibit B, ¶¶7-8). Upon admission to the York County Prison, Bradshaw reported he was on Tagamet, Prozac, Baclofen, Ambien and Naprosyn. The medical records accompanying Bradshaw from his transferring facility reflected that Bradshaw had previously been on Darvocet, but his prescription was terminated about two weeks prior to his transfer. (Id. at ¶ 9). The transferring prison also noted that his medication "had to be 'crushed' prior to ingestion as he was hoarding medications." (Id. at ¶ 10).

During Bradshaw's approximate ten-month stay at the York County Prison, he submitted at least 44 sick slips seeking narcotics, muscle relaxants and Benzodiazepines. (Id. at ¶ 11). He was examined at sick call approximately 44 times for various complaints including back pain, insomnia, complaints of carpal tunnel in his right hand, dental needs, a request for an inhaler, as well as repeated meetings with the institution's mental health psychologist and psychiatrist. Treatment was given each time. (Id. at ¶ 12).

On August 30, 2000, Bradshaw was seen by a Physician's Assistant for a complaint of chronic back pain associated with a motor vehicle injury in 1982. He advised the assistant that he had

-4-

a history of Hepatitis C, alcoholic hepatitis, and a history of past IV drug use.  The Physician Assistant examined Bradshaw and noted his spine was non-tender to palpation and only exhibited signs of back discomfort when discussing his back.  Motrin, Tagamet, Klonopin, Prozac and Baclofen were ordered for thirty days.  (Id. at ¶ 15).  A week later, Bradshaw was seen by the psychiatrist and diagnosed with a "depressive disorder" and Doxepin was ordered.  (Id. at ¶ 16).  The next day Bradshaw was caught, and admitted to, hoarding his medications.  (Id. at ¶ 17).

On September 13, 2000, Bradshaw again complained of backpain. He was examined by Dr. Nicholson, a non-defendant, who prescribed Naprosyn (a non-narcotic anti-inflammatory) and Soma for thirty days.  (Id. at ¶ 18).  On September 17, 2000, despite an order directing Bradshaw's medication be crushed prior to ingestion, Bradshaw was again found to be hoarding medication.  A few days later, Bradshaw was seen again by Dr. Nicholson who recorded that Bradshaw reported feeling better.  (Id. at ¶¶ 19-20).

Bradshaw was seen in the medical unit for various medical, dental, and mental health issues on the following days: September 20, September 21, September 23, September 25, September 28, October 3, October 6, October 20 and October 22, 2000.  (Id. at ¶¶ 20-26). After medical staff judged Bradshaw to be abusing the sick call privilege, he was placed on the sick call schedule to be checked

once weekly.  (Id. at ¶ 27).  Bradshaw was seen by the psychiatrist on October 27, 2000.  He was seen at sick call on November 7, 2000, for complaints of carpal tunnel, sweating, dry mouth, and shortness of breath with exercise.

The first time Bradshaw is reported to have seen Dr. Sauers was November 17, 2000.  She examined Bradshaw for complaints of carpal tunnel syndrome in his right hand and chronic back pain. There were no physical findings indicative of an acutely herniated disc.  A ten-day course of steroidal anti-inflammatory therapy was prescribed.  This therapy was continued on November 26, 2000, despite minimal objective findings.  (Id. at ¶¶ 30-31).

On December 11, 2000, Bradshaw was seen about his complaint of carpal tunnel syndrome and request for a stronger pain medication. The following day he was seen by the psychiatrist.  His medication regime at the time, consisting of Tagamet, Prozac, Doxepin, Naprosyn, Klonopin and Predforte, was not altered.  (Id. at ¶¶ 32-33).  On December 13, 2000, Bradshaw spoke to the Health Care Administrator and stated he had previously been on Darvocet, was suffering greatly and needed her intervention or he would take legal action.  (Id. at ¶ 35).  Bradshaw was examined by the Physician Assistant the next day and requested Darvocet, Soma and Ambien.  He did not demonstrate any objective findings of a herniated disc and was prescribed Naprosyn.

-6-

On January 3, 2001, Bradshaw was seen at sick call for a
complaint of lower back pain after reporting he fell in the shower.
No obvious injuries were noted at that time. Bradshaw was seen by
an orthopedist for complaints of lower back pain on January 23,
2001. No changes were made to his therapy. (Id. at ¶¶ 36-39).

After continuing complaints of back pain, Dr. Sauers saw
Bradshaw on January 30, 2001, at which time minimum tenderness was
noted over the mid to lower lumbar spine. Degenerative joint
disease was suspected rather than sciatic neuritis or a herniated
disc disease. An x-ray was taken of Bradshaw's back and revealed
no significant abnormalities or narrowing of the disc spaces. His
Naprosyn was continued. (Id. at ¶40).

After complaining about receiving crushed medications,
Bradshaw was seen by the psychologist and it was noted that
Bradshaw had been non-compliant and hoarding his Klonopin and
giving it to other inmates. (Id. at ¶ 42). The same day he was
seen by the psychiatrist who was weaning him off Klonopin. The
psychiatrist ordered Thorazine in its place. The liquid form of
Thorazine was offered to Bradshaw after he complained the crushed
medication was burning his throat. (Id. at ¶¶ 43-44).

Bradshaw continued to be monitored for his lower back pain and
psychiatric problems. (Id. at ¶ 45-46). Dr. Sauers states that
during Bradshaw's multiple visits with physician and health care

-7-

providers none of them noted the appearance of severe distress secondary to back pain, but they did consistently note the absence of signs of significant musculoskeletal disease.  Dr. Sauers noted that narcotic therapy is reserved for inmates with pain due to terminal illness, postoperatively, or for acute severe injuries. She contends Bradshaw was prescribed medication appropriate to his level of pain.  (Id. at ¶¶ 48-50).

To counter defendants' motion and affidavits, Bradshaw submitted a response, attaching documents demonstrating his efforts at administrative exhaustion (Doc. 25). Additionally, Bradshaw claims he was on "S.S.I. disability, having been diagnosised (sic) one hundred percent disabled." (Doc. 25).  Without further elaboration, he also asserts that many of Dr. Sauers' assertions in her affidavit "are total fabrications of the facts."  (Id.). Although invited to submit evidentiary materials to counter defendants' motion for summary judgment, Bradshaw failed to file any additional documents.

III. Discussion.

A.    Summary Judgment Standard.

Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved, and the moving party is

-8-

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;
<u>Peterson v. Lehigh Valley District Council</u>, 676 F.2d 81, 84 (3d
Cir. 1982).  The Supreme Court has ruled that Fed. R. Civ. P. 56(c)
"mandates the entry of summary judgment, after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."  <u>Celotex Corp v. Catrett</u>, 477 U.S.
317 (1986).  The Court further stated that "Rule 56 (e). . .
requires the non-moving party to go beyond the pleadings and by
[his] own affidavits, or by the 'depositions, answers to
interrogatories, and admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial.'"  <u>Id</u>. at 324.
The Supreme Court in <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242
(1986), has held that the opposing party must adduce more than a
mere scintilla of evidence in its favor, and cannot simply reassert
factually unsupported allegations contained in its pleadings.  <u>See</u>
<u>Celotex</u>, 477 U.S. at 325.  Further, an opposing party cannot defeat
summary judgment simply by asserting that a jury might disbelieve
an opponent's affidavit.  <u>Liberty Lobby</u>, 477 U.S. at 256-57.

    The moving party can discharge the burden by showing an
absence of evidence to support the non-moving party's case.
<u>Celotex</u>, 477 U.S. at 325.  If the evidence in favor of the non-

moving party is merely colorable or not significantly probative, summary judgment should be granted.  <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586 (1986)).  The non-moving party must submit his own evidentiary materials showing that a genuine issue exists. <u>Celotex</u>, 477 U.S. at 324.  Therefore, when the movant has supported his motion with affidavits, the opponent "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." <u>Childers v. Joseph</u>, 842 F.2d 689, 693-94 (3d Cir. 1988)(citing <u>Liberty Lobby, Inc</u>., 477 U.S. at 249).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. <u>Anderson</u>, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. <u>White v. Westinghouse Electric Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric</u>

-10-

Industrial Company, Ltd. v Zenith Radio Corporation., 475 U.S. 574,
587 (1986).  Finally, it is additionally well-settled that pro se
complaints should be liberally construed.  Haines v. Kerner, 404
U.S. 519, 520 (1972).

Defendants assert that they are entitled to an entry of
summary judgment because Bradshaw has failed to exhaust his
available administrative remedies with respect to his medical-care
claims.  Alternatively, they argue that the materials and
undisputed facts establish that they were not deliberately
indifferent to Bradshaw's non-serious medical condition.  Because
plaintiff has failed to properly respond to the defendants' motion
for summary judgment, the material facts set forth by the
defendants will be accepted as true.  Shulz v. Celotex, 942 F.2d
204 (3d Cir. 1991); Anchorage Associates v. V.I. Bd. of Tax Review,
922 F.2d 168, 175 (3d Cir. 1990).  A determination must next be
made as to whether the defendants, on those undisputed facts, are
entitled to judgment as a matter of law.  As the Court will set
forth more fully below, even accepting the plaintiff's statement of
claim as true, defendants are entitled to judgment in their favor.

B.    Exhaustion of Available Administrative Remedies by
      Bradshaw, an INS Detainee Civil Litigant.

The defendants argue that the plaintiff cannot pursue this
action because he has failed to exhaust his administrative

-11-

remedies.  They base their argument on 42 U.S.C. § 1997e(a), which

provides as follows:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> Title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility until such administrative
> remedies as are available are exhausted.

Thus, prisoners are required to exhaust available administrative

remedies before filing suit under to 42 U.S.C. § 1983 or any other

federal law.  Subsection (h) defines the term "prisoner" as "any

person incarcerated or detained in any facility who is accused of,

convicted of, sentenced for, or adjudicated delinquent for,

violations of criminal law or the terms and conditions of parole,

probation, pretrial release, or diversionary program."  42 U.S.C. §

1997e(h).

Thus, if plaintiff is a "prisoner" within the meaning of 42

U.S.C. ¶ 1997(e), Defendants could assert a defense of failure to

exhaust administrative remedies.  However, an INS detainee does not

fall within the definition of "prisoner," as defined in that

section.  See Page v. Torrey, 201 F.3d. 1136 (9th Cir. 2000)

(civilly committed sexual predator is not a "prisoner" bound by the

exhaustion requirements of 42 U.S.C. § 1997e(a)); LaFontant v. INS,

135 F.3d 158, 165 (D.C. Cir. 1998)(filing-fee requirements of 28

U.S.C. § 1915 do not apply to an incarcerated alien facing removal

because an alien is not a "prisoner" as defined in 28 U.S.C. §

1915(h), a definitional provision identical to section 1997e(h));

<u>Ojo v. INS</u>, 106 F.3d 680, 682 (5th Cir. 1997)(filing-fee

requirements of 28 U.S.C. § 1915 do not apply to an immigrant

released at the end of his prison sentence to the custody of the

INS for deportation proceedings); <u>Omosefunmi v. York County Prison</u>,

No. 1:CV-00-2228 (M.D. Pa. Feb. 2, 2001) (Caldwell, J.)(INS

detainee is not a prisoner within meaning of section 1915 and

cannot be compelled to pay the full filing fee in installments

under section 1915(b)); <u>Pedroso v. Hogan</u>, No. 3:CV-00-2209 (M.D.

Pa. June 5, 2002)(Kosik, J.)(INS detainee not a "prisoner" and thus

not required to comply with exhaustion requirement of section

1997e(a)).

Thus, because Bradshaw is an INS detainee, section 1997e(a)'s

exhaustion requirement does not apply, and Defendants' motion for

summary judgment based upon Bradshaw's failure to allege or

demonstrate exhaustion of available administrative remedies must be

denied.[2]

_____

[2]The administrative order of May 1, 2001, required Plaintiff to
pay the filing fee for this action in installments, as mandated by
28 U.S.C. § 1915(b).  Since Bradshaw is not a "prisoner" within the
meaning of section 1915(h), however, the court will vacate that
order and return any funds received from Bradshaw toward the
payment of the filing fee.  For the same reason, the court will
grant Bradshaw's request for leave to proceed in forma pauperis
since the information contained in his request indicates he is
unable to pay the fees and costs connected with this lawsuit.  The
order of July 17, 2001, dealing with that request, will be modified
accordingly.

C.   Deliberate Indifference.

The Plaintiff alleges that while housed at the York County Prison he was denied proper and adequate medical care for his back ailment in violation of his Eighth Amendment rights because defendants refused to prescribe him narcotic pain relievers he requested (Darvocet, Soma or Vicodin). In Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999), the Court of Appeals for the Third Circuit set forth the standard necessary to establish a claim for deliberate indifference to a prisoner's medical needs.   The Court stated:

> The Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary standards of decency. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used: In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 106, 97 S.Ct. 285. Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious.... It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference. As the Estelle Court noted: [I]n the medical context,

-14-

> an inadvertent failure to provide adequate
> medical care cannot be said to constitute an
> unnecessary and wanton infliction of pain' or
> to be 'repugnant to the conscience of mankind.
> *Id*. at 105, 97 S.Ct. 285... Deliberate
> indifference, therefore, requires obduracy and
> wantonness . . . which has been likened to
> conduct that includes recklessness or a
> conscious disregard of a serious risk... We
> have found deliberate indifference in a variety
> of circumstances, including where the prison
> official (1) knows of a prisoner's need for
> medical treatment but intentionally refuses to
> provide it; (2) delays necessary medical
> treatment based on a non-medical reason; or (3)
> prevents a prisoner from receiving needed or
> recommended medical treatment.... We also have
> found deliberate indifference to exist where
> the prison official persists in a particular
> course of treatment in the face of resultant
> pain and risk of permanent injury.

Id. at 197 (some internal citations and quotations omitted).

Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). More than a decade ago, the Third Circuit ruled that "while the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). "A medical decision not to order an X-ray, or like measures, does not

-15-

represent cruel and unusual punishment.  At most it is medical malpractice." <u>Estelle v. Gamble</u>, 429 U.S. at 107.

Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist.  <u>Nottingham v. Peoria</u>, 709 F.Supp. 542, 547 (M.D.Pa. 1988).  Disagreement among individuals as to the proper medical treatment does not support an Eighth Amendment claim.  <u>Monmouth County Correctional Inst. Inmates v. Lensario</u>, 834 F.2d 326, 346 (3d Cir. 1987).  "It is well settled that claims of negligence or malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference'".  <u>Rouse v. Plantier</u>, 182 F.3d at 197.  Only flagrantly egregious acts or omissions can violate the standard.  Mere medical malpractice cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider.  <u>White v. Napoleon</u>, 897 F.2d 103, 108-10.

Assuming without deciding, that plaintiff's back ailment is serious in the constitutional sense, the record illustrates clearly that plaintiff has received medical attention and pain medication for this pain and other symptoms.  Specifically, the record reflects that Bradshaw was <u>not</u> taking Darvocet, Soma or Vicodin at the time of his transfer to the York County Prison. He did arrive with a past history of drug abuse, mental health problems, and the

-16-

hoarding of prescription medication which he then distributed to others.  He was seen approximately 44 times by medical personnel during his ten month stay at the York County Prison. His complaints of pain were not ignored by the prison medical staff.  He was evaluated routinely by various medical and mental health staff members.  His medical and psychiatric conditions were monitored by the prison medical care providers.  His back was x-rayed and he was seen by an orthopedist, yet there were no significant physical or other abnormalities or narrowing of the disc spaces noted.  Dr. Sauers and others balanced Bradshaw's subjective complaints of pain with his medical and mental health history in treating his complaints with a limited course of steroids and an on-going script for Naprosyn.  Dr. Sauers noted narcotic pain killers were only used in a very limited and specific circumstances: post-operative pain, pain associated with terminal illnesses, and acute severe injuries.

Bradshaw's submission of affidavits of two other individuals who received Darvocet while housed at the prison, does not undermine the defendants' position with respect to their chosen course of pain-management therapy for Bradshaw because neither affidavit suggests the underlying medical condition for which these individuals were being treated.  Thus, Bradshaw cannot demonstrate they were similarly situated with respect to their eligibility for

-17-

narcotic pain medication within the prison.  Furthermore, the affidavits overlook the treating physician's need to individualize patient care based upon their professional opinion of the individual patient's needs or complications, such as a history of drug addiction or mental health considerations.  Therefore, the mere fact that two other individuals within the prison setting received narcotic pain medications does not advance Bradshaw's claim of deliberate indifference to his chronic complaints of back pain.  Additionally, unlike Bradshaw, the Court cannot conclude he did not receive Darvocet because of his alien status.  No material factual dispute, or genuine triable issue, is created by these affidavits.  The record demonstrates that Dr. Sauers, and other treating physicians, exercised their professional judgment in electing to prescribe non-narcotics for Bradshaw.

Moreover, Bradshaw has failed to controvert the defendants' statement of facts or submit any expert medical opinion to controvert the defendant's expert medical opinion.  When expert opinion is offered in support of a motion for summary judgment, the opposing party must supply opposing expert opinion to create a triable issue of fact.  Gaus v. Mundy, 762 F.2d 338 (3d Cir. 1985). See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987) (requiring a prisoner to provide expert testimony in a medical deliberate indifference case).

Bradshaw's complaint that his repeated requests for alternative pain medication, other than that prescribed by the physicians, is based on the defendants' failure to prescribe his chosen pain-management drugs and amounts to nothing more than plaintiff's subjective disagreement with the defendants' treatment decisions and medical judgment.  At most, the allegations in the complaint rise to the level of mere negligence.  As simple negligence cannot serve as a predicate to liability under § 1983, Hudson v. Palmer, 468 U.S. 517 (1984), plaintiff's civil rights complaint fails to articulate an arguable claim under § 1983.  See White, 897 F.2d at 108-110.  Thus, Dr. Sauers is entitled to summary judgment in this matter.

D.    Claims against EMSA Correctional Care, Inc.

Bradshaw must demonstrate both the existence of a policy and a causal link between the policy and the alleged injuries complained of before liability will attach to EMSA.  Monell v. New York City Department of Social Services, 436 U.S. 658 (1978); Unterberg v. Correctional Medical Systems, Inc., 799 F.Supp. 490, 497(E.D. Pa. 1992).  Even though Bradshaw has named EMSA as a defendant, he has in not implicated EMSA in any way in the constitutional violation he alleges.  He does not claim that EMSA was directly involved in his injury or that his injury was the result of EMSA policy or custom.  He appears to name them soley as the employer of the

-19-

physicians who treated him at the York County Prison.  Thus,
Bradshaw fails to state a claim against this defendant.

     E.   Claims against York County Prison.

     Turning to Bradshaw's claims against York County Prison
itself, he cannot maintain a § 1983 claim against this entity.  A
prison or correctional facility is not a "person" within the
meaning of § 1983.  See Will v. Michigan Dep't of State Police, 491
U.S. 58, 71 (1989)(holding same for state police); Alabama v. Pugh,
438 U.S. 781, 782 (1978); Duvall v. Borough of Oxford, No. 90-0629,
1992 WL 59163, at *2 (E.D. Pa. Mar, 19, 1992) (county prison not a
"person" subject to suit under § 1983).  Consequently, this
defendant too is entitled to summary judgment.


IV.  Conclusion.

     There is insufficient proof in the record for a fair-minded
jury to conclude that the defendants were deliberately indifferent
to Bradshaw's medical needs.  See Estelle v. Gamble, 429 U.S. 97,
106 (1976).  Indeed, the scope and quality of medical attention
that the defendants provided Bradshaw precludes a finding of
deliberate indifference.  Although Bradshaw may not have received
the treatment he desired, i.e. narcotics and muscle relaxants, he
clearly received continuous appropriate medical treatment whenever
he complained of back pain.

An appropriate Order is attached.


WILLIAM W. CALDWELL
United States District Judge

Date: July 24, 2002